UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASHLEY ROBERTSON, | CASE NO. C09-5463JLR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KING COUNTY, et al., | |
| Defendants. | |

This matter comes before the court on the motion for summary judgment and qualified immunity (Dkt. # 17) filed by Defendants King County, Deputy Todd D. Miller, and John Doe King County Deputies 1-5.  Having considered the submissions of the parties and the relevant law, and no party having requested oral argument, the court GRANTS Defendants' motion.

## I.   BACKGROUND

On February 23, 2007, Ms. Robertson hosted a birthday party for friends at Maxi's, a restaurant on the top floor of the Doubletree Hotel in SeaTac, Washington.

ORDER- 1

1  (Robertson Dep.[1] 12:1-8.)  At approximately 1:30 a.m. on February 24, 2007, Ms.

2  Robertson and her friends decided to leave the restaurant.  (*Id.* 13:14-17.)  No one in the

3  restaurant told Ms. Robertson or her friends to leave.  (*Id.* 14:1-5; *see also* Ladenburg

4  Decl. (Dkt. # 22) Ex. 2 ("Seydel Dep.") 32:5-18; 33:19-23; *id.* Ex. 3 ("Newbill Dep.")

5  18:6-19:18; *id.* Ex. 4 ("Donaldson Dep.") 20:12-22.)  In the elevator, Ms. Robertson and

6  her friends met the restaurant manager, Eric Van der Goore.  (Robertson Dep. 16:19-23.)

7  Mr. Van der Goore asked them if they had had a good time at the party.  (*Id.*)  He did not

8  ask Ms. Robertson or her friends to leave the premises.  (*Id.*)

9       At about 1:45 a.m., Deputy Miller responded to a 911 call from Mr. Van der

10  Goore asking for help regarding a fight in progress at Maxi's.  (Miller Decl. (Dkt. # 19) ¶

11  2; *see also* Bundy Decl. (Dkt. # 18) Ex. 2 ("Van der Goore Dep.") at Dep. Ex. 2.)  When

12  Deputy Miller arrived at the hotel, he saw two deputies in the process of arresting a man.

13  (*Id.* ¶ 3.)  Deputy Miller helped the deputies complete the arrest.  (*Id.*)

14       After assisting in the arrest, Deputy Miller entered the lobby of the hotel and

15  spoke with a hotel security guard and with Mr. Van der Goore, who told him that there

16  had been a fight at Maxi's and that they were having problems with Maxi's patrons

17  remaining in the lobby after the restaurant closed.  (Miller Decl. ¶ 4.)  Mr. Van der Goore

18  told Deputy Miller that he wanted the deputies to help him get all of the Maxi's

19  customers to leave the hotel.  (*Id.*; *see also* Van der Goore Dep. 30:2-10 (stating that he

---

[1] Both parties offered excerpts from Ms. Robertson's March 4, 2010 deposition.  (Bundy Decl. (Dkt. # 18) Ex. 1; Ladenburg Decl. (Dkt. # 22) Ex. 1.)  For simplicity, the court cites directly to Ms. Robertson's deposition rather than to these declarations.

1  "was concerned with whoever was in my front lobby at the time that was not a hotel
2  guest.").) Deputy Miller asked Mr. Van der Goore whether he wanted those who refused
3  to leave "to be trespassed" and if he was willing to assist in prosecuting people arrested
4  for trespassing. (Miller Decl. ¶ 4.) Mr. Van der Goore agreed that this was what he
5  wanted. (*Id.*; *see also* Van der Goore Dep. 30:2-13.) Deputy Miller, four other deputies,
6  and Mr. Van der Goore began to walk around the lobby telling people to leave. (Miller
7  Decl. ¶ 5.)

8  Meanwhile, as Ms. Robertson and her friends started to walk from the elevator
9  toward the hotel lobby, they were approached by several deputies. (Robertson Dep.
10 14:19-20, 15:4-7.) Deputy Viktor White asked Ms. Robertson whether her group was
11 involved in the disturbance at Maxi's. (*Id.* 15:4-11; Bundy Decl. Ex. 3 ("White Dep.")
12 20:22-21:18.) Ms. Robertson told him, "No. Just because we're black doesn't mean that
13 we had anything to do with the altercation in Maxi's." (Robertson Dep. 15:12-14.) Ms.
14 Robertson added that they were not doing anything wrong and were leaving. (*Id.* 15:15-
15 20.) Deputy White told her to "get out of his face." (*Id.* 16:16-17.) Ms. Robertson and
16 her friends continued to walk toward the lobby and then left the hotel. (*Id.* 16:4; *see also*
17 Bundy Decl. Ex. 8, video clip titled "leaving," at 3:55.) Ms. Robertson states that no one
18 in the lobby told her to leave. (*Id.* 16:14-19.)

19 As she was leaving, Ms. Robertson realized that she needed to cancel a room
20 reservation that she had made for that night, so she re-entered the hotel and walked
21
22

ORDER- 3

1  toward the front desk.² (*Id.* 16:4-13, 21:22-24; *see* "leaving" at 4:25.) Deputy Miller
2  held up his hand and told Ms. Robertson to leave. (Miller Decl. ¶ 6; *see* "leaving" at
3  4:30.) Ms. Robertson told Deputy Miller that she needed to cancel her reservation.
4  (Robertson Dep. 21:22-22:1.) Deputy Miller told Ms. Robertson that she could call the
5  hotel to cancel the reservation, and again stated that she needed to leave. (*Id.* 22:2-8;
6  Miller Decl. ¶ 6.) When Ms. Robertson continued to protest, Deputy Miller pointed
7  toward the front door and told her to leave or she would be arrested. (Robertson Dep.
8  22:10-11; Miller Decl. ¶ 6; *see* "leaving" at 4:40.) Ms. Robertson states that she said
9  "fine" and turned to leave. (Robertson Dep. 22:12-14.) Ms. Robertson states that Deputy
10 Miller then grabbed her arm, put it behind her, and forcefully walked her toward the exit.
11 (*Id.* at 22:12-20.) When they passed the first set of double exit doors, a group of officers
12 threw her on the ground and handcuffed her.³ (*Id.*) Deputy Miller and a second deputy
13 escorted Ms. Robertson back through the hotel lobby to a patrol car in the parking lot
14 behind the hotel, and then took her to jail. (*Id.* 30:3-14.)

---

17  ² Ms. Robertson had asked a friend who worked at the hotel to reserve two rooms using her employee discount. Ms. Robertson states that the reservations were for her friend Malik, who used only one of the rooms. Ms. Robertson wanted to be sure to cancel the unused reservation so that her friend would not get in trouble for letting Ms. Robertson use her employee discount. (*See* Robertson Dep. 8:1-20:4.)

20  ³ Although the court here relies upon Ms. Robertson's account of her arrest, the court notes that Deputy Miller states that he initially guided Ms. Robertson to the doors by her elbow and placed Ms. Robertson in a bent arm lock after she pulled her arm away from him. (Ladenburg Decl. Ex. 5 ("Miller Dep.") 45:5-46:18.) Ms. Robertson continued to struggle, and as they passed the first set of doors, she began to push back. At this point, Deputy Miller told Ms. Robertson she was under arrest. (*Id.* 46:19-47:21.) Deputy Miller and the other deputies then took Ms. Robertson to the ground and handcuffed her. (*Id.* 54:4-24.)

On March 14, 2007, Ms. Robertson was arraigned in the City of SeaTac Municipal Court on charges of criminal trespassing in the first degree in violation of RCW 9A.52.070 and resisting arrest in violation of RCW 9A.76.040.  (Bundy Decl. Ex. 6.)  Ms. Robertson was not represented by counsel at her arraignment hearing.  At the hearing, the court found probable cause to arrest for purposes of setting conditions on Ms. Robertson's release.  (*Id.*)  On April 12, 2007, Ms. Robertson and the City entered into an agreed order of continuance.  (Bundy Decl. Ex. 7.)  Ms. Robertson agreed to pay costs of $200.00, to stay away from the Doubletree Hotel for one year, and to have no criminal charges or convictions for one year.  (*Id.*)  In exchange, the City agreed to dismiss with prejudice the resisting arrest charge, and to dismiss with prejudice the trespassing charge if Ms. Robertson complied with the terms of the order.  (*Id.*)  Ms. Robertson complied with the order, and after one year, the City dismissed the trespassing charge.  (*See* Bundy Decl. Ex. 6.)

## II.   ANALYSIS

Defendants move for summary judgment on all of Ms. Robertson's claims.  In her response, Ms. Robertson stipulates to the dismissal of her § 1983 excessive force claim, her state-law assault and battery claim, and her claims under the Washington Constitution.  (Resp. (Dkt. # 22) at 1-2, 18-19.)  Therefore, the court grants Defendants' motion for summary judgment on these claims, and focuses its analysis on Ms.

Robertson's § 1983 false arrest claim and her state-law false arrest and false imprisonment claims.[4]

**A.   Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

**B.   Section 1983 False Arrest Claim**

Section 1983 provides a damages action to a plaintiff subjected to a deprivation of constitutional rights by a defendant acting under color of law. Individuals accused of violating the statute may invoke the defense of qualified immunity, which provides a complete defense to a § 1983 violation where the scope of the federal right the plaintiff

---

[4] The court notes that Ms. Robertson made no allegations in her complaint regarding King County's municipal liability under § 1983, and the parties do not address municipal liability in their motions. (*See* Compl. (Not. of Removal (Dkt. # 1) at 6-13 ); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (a municipality may be held liable under § 1983 only where the municipality itself causes the constitutional violation; the municipality will not be held liable under *respondeat superior*).)

invokes was not "clearly established," or when the defendant's "mistake as to what the law requires is reasonable". *Pearson v. Callahan*, --- U.S. ----, ----, 129 S. Ct. 808, 815 (2009); *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).  A court examining a § 1983 claim and a qualified immunity defense thus must address two issues: whether the defendant violated a constitutional right, and whether that right was clearly established such that it would be clear to a reasonable officer that his conduct would be unlawful in that situation.  *Pearson*, 129 S. Ct. at 815-16.  The court has discretion to choose which of these issues to analyze first, and may decline to address the remaining issue if the first is dispositive.  *Id.* at 818.  Here, the court begins by analyzing whether Deputy Miller violated Ms. Robertson's constitutional rights, and, finding that issue dispositive, grants Deputy Miller's motion for summary judgment based on qualified immunity.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).  In evaluating whether an officer had probable cause to arrest, a court must consider "the totality of the circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime." *Id.* (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) (internal edits omitted)).  "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to

1 arrest is immaterial in judging whether his actions were reasonable for Fourth
2 Amendment purposes." *Id.* (citing *Lopez*, 482 F.3d at 1072). The determination
3 whether there was probable cause is based upon the information the arresting officer had
4 at the time of the arrest. *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). A
5 court may not consider additional facts that became known only after the arrest was
6 made. *Id.* (citing *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)).

7   In this case, the undisputed facts show that Deputy Miller had probable cause to
8 arrest Ms. Robertson for criminal trespassing in the first degree. "A person is guilty of
9 criminal trespass in the first degree if he knowingly enters or remains unlawfully in a
10 building." RCW 9A.52.070. "A person 'enters or remains unlawfully' in or upon
11 premises when he is not then licensed, invited, or otherwise privileged to so enter or
12 remain." RCW 9A.52.010(3). Here, it is undisputed that Mr. Van der Goore asked
13 Deputy Miller to help him to get the Maxi's patrons to leave the hotel and agreed that he
14 would assist in a trespass prosecution if necessary. In addition, Ms. Robertson testified
15 that she left the hotel lobby and then returned; that she was not staying overnight at the
16 hotel; that Deputy Miller told her to leave; and that she continued to protest that she was
17 entitled to stay after Deputy Miller told her to leave. (*See* Robertson Dep. 16:4-13,
18 21:22-22:14.) Although Ms. Robertson states that Deputy Miller was the first person
19 who told her to leave the hotel, an officer in Deputy Miller's position, aware that his
20 fellow deputies, a hotel manager, and a hotel security guard had told the people in the
21 lobby to leave the premises, could reasonably believe someone in authority had already
22 told Ms. Robertson to leave. (*See* Miller Decl. ¶ 5.) The court therefore concludes that a

ORDER- 8

prudent officer faced with these undisputed facts could have concluded that there was a fair probability that Ms. Robertson had knowingly entered or remained unlawfully in the hotel lobby. *John*, 515 F.3d at 940; RCW 9A.52.070.[5]  As a result, Deputy Miller had probable cause to arrest Ms. Robertson for criminal trespassing in the first degree. The court therefore finds no constitutional violation and grants summary judgment of qualified immunity to Deputy Miller on Ms. Robertson's § 1983 false arrest claim.[6]

**C.     State-law False Arrest and False Imprisonment Claims**

To establish a claim for false arrest under Washington law, a plaintiff must show that the defendant violated the plaintiff's right of personal liberty or restrained the plaintiff without legal authority. *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983). To establish false imprisonment, the plaintiff must show that the defendant intentionally confined him without justification. *Id.*  Probable cause is a defense to an action for false arrest or false imprisonment. *Id.* at 500. Because, as discussed above, the undisputed facts show that Deputy Miller had probable cause to arrest Ms. Robertson

---

[5] Ms. Robertson's reliance on *State v. R.H.*, 939 P.2d 217 (Wash. Ct. App. 1997), is misplaced. In R.H., the criminal defendant challenged his conviction for criminal trespassing on the ground that the State had not presented "evidence from which a rational trier of fact could conclude beyond a reasonable doubt that R.H. did not comply with the lawful conditions of access to the premises." *Id.* at 220. Here, by contrast, the issue is whether, based on the facts known to him, Deputy Miller could reasonably conclude that there was a fair probability that Ms. Robertson had knowingly entered or remained unlawfully on the premises. *John*, 515 F.3d at 940. The issue of probable cause to arrest was not addressed in *R.H.*

[6] Because there was no constitutional violation, the court need not address whether the constitutional right was clearly established. *See Pearson*, 129 S. Ct. at 818. In addition, because the undisputed facts show that Deputy Miller had probable cause to arrest Ms. Robertson, the court does not address whether the municipal court's finding of probable cause at Ms. Robertson's arraignment has collateral estoppel effect in this case.

for criminal trespassing in the first degree, the court grants summary judgment to Deputy Miller and to King County on Ms. Robertson's state-law false arrest and false imprisonment claims.

### III.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment and for qualified immunity (Dkt. # 17).

Dated this 7th day of October, 2010.

JAMES L. ROBART
United States District Judge

ORDER- 10